**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| PHILLIP E. HILL, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:05-CR-0269-TWT-JFK-11 |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | CIVIL FILE NO. |
| | : | 1:12-CV-2894-TWT-JFK |
| | : | |

**UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

Movant, Phillip E. Hill, seeks via 28 U.S.C. § 2255 to challenge the constitutionality of his convictions and sentence entered in this Court under the above criminal docket number. The matter is before the Court on the § 2255 motion, as amended, (Docs. 1781, 1835), Respondent's response, (Doc. 1798), Movant's post-hearing brief, (Doc. 1848), Respondent's brief in response, (Doc. 1849), and Movant's reply brief, (Doc. 1850, Attach.). For the reasons discussed below, Movant's motion to vacate is due to be denied.

**I.    28 U.S.C. § 2255 Standard**

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United

States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. Collateral relief, however, is limited, and "[o]nce [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted" and "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 164-65 (1982). Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn v. United States, 365 F.3d 1225, 1232 (2004) (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); see also Massaro v. United States, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts). On collateral review, it is the movant's burden to establish his right to relief. Mackey v. United States, 221 F. App'x 907, 910 (11th Cir. 2007).

**II.     Discussion**

    **A.     Background**

This action involves Movant's conviction for a fraud scheme from 2000 to 2003, in which Movant and "his associates scooped out of the market almost $22 million in illicit gain." United States v. Hill, 643 F.3d 807, 819 (11th Cir. 2011), cert. denied, _ U.S. _, 132 S. Ct. 1988 (2012). They obtained over 300 mortgage-backed loans for straw buyers who then purchased "Atlanta-area houses and condominiums from [Movant] and his associates at more than market value[,]" with Movant and his associates receiving the profits "from the sweet deals they had made by selling the properties at inflated prices." Id. at 819-20. "Almost all of those loans . . . went into default causing lenders and guarantors to be stung with over $38 million in losses. Innocent homeowners in neighborhoods that were hit with foreclosures and distorted property values caused by the scheme also felt the pain, and many people who were used as straw buyers suffered ruined credit and a number of them went bankrupt." Id. at 819.

Movant, under investigation on the above crimes, hired Bruce Morris as counsel in approximately June 2001. (See Doc. 1841 at 29, 57). The grand jury sitting in the Northern District of Georgia initially indicted Movant in June 2005 and in a November

2006 third superceding indictment charged Movant on the following 187 counts: (1) conspiracy to defraud the United States, (2) bribery of a bank officer, (3&4) bank fraud, (5-8) false credit applications, (9-14) money laundering, (15) conspiracy to defraud the United States, (16-18) wire fraud, (19) conspiracy to defraud the United States, (20-33) false credit applications, (34-38) mail fraud, (39-48) wire fraud, (49-94) money laundering, (95-181) money laundering, and (182-187) false credit applications. (Docs. 16, 702). Movant proceeded to trial represented by Mr. Morris. (Doc. 949). Former Assistant United States Attorney Barbara E. Nelan performed as lead counsel for the United States. (See id.).

Movant "requested that the jury be instructed that good faith reliance on his counsel's advice was a complete defense to the charges against him." Hill, 643 F.3d at 850. The Court denied Movant's requested instruction,

> finding that there was insufficient evidence to support the instruction because there had been no testimony that any of the defendants actually did rely on advice of counsel. In denying [Movant's] post-trial motion for acquittal, the district court reiterated that there was no evidence to support the instruction. It added that the fraud was obvious from the face of the documents and that the attorneys who testified about the residential mortgage fraud scheme were admitted co-conspirators.

Id. at 850-51. The jury found Movant guilty on 166 counts – counts 1, 3-15, 18-32, 34-44, 46, 48-84, 86, 89-90, 95-100, 103-124, 126, 129-178, 182-187 – and not guilty

on the remaining 21 counts. (Doc. 1079; Doc. 1262 at 1). The Court imposed a 336-month term of imprisonment. (Doc. 1262).

On appeal, Movant challenged the Court's refusal to give his requested jury instruction and argued that "because he used attorneys for most of the fraudulent transactions and closings, he was entitled to rely on their implied advice that what he was doing was legal." Hill, 643 F.3d at 850.

The Eleventh Circuit Court of Appeals found as follows.

> In order to qualify for an instruction on good faith reliance on the advice of counsel, a defendant must show that (1) he fully disclosed to his attorney all material facts that are relevant to the advice for which he consulted the attorney; and (2) thereafter, he relied in good faith on advice given by his attorney. . . .
>
> Although the burden on a defendant to put forth sufficient evidence to support a proposed jury instruction is low, . . . [Movant] failed to meet it because there was no evidence to support the instruction. [Movant] points out that attorneys were used by many of his "investors" as well as by the lenders, and he was personally represented by at least five different attorneys over the course of the events. At no point, however, did any of the attorneys advise [Movant] that the overall scheme or all of its essential components were legal.
>
> . . . .
>
> Given the lack of evidence to support an advice of counsel instruction, the district court's refusal to give one was not an abuse of discretion.

Id. at 851.

B.     **Movant's § 2255 Motion**

Movant argues in his § 2255 motion that: Mr. Morris (1) misapprehended the law and facts on the defense of good faith reliance on counsel and mortgage brokers and ineffectively advised Movant he had such a defense and (2) ineffectively advised him to reject the government's twelve-year plea offer. (Doc. 1781 at 4 and Mem. at 2; Doc. 1835). Movant asserts that Mr. Morris's deficient advice prejudiced him because the Court found that he did not meet the standard for jury instructions on a good-faith advice-of-counsel defense and, without a defense, Movant was convicted and received a twenty-eight year term of imprisonment. (Doc. 1781, Mem. at 5). Movant asserts that had he known he did not have a viable good-faith advice-of-counsel defense, he would have entered into a negotiated plea or pleaded guilty without a plea agreement and received a downward departure for acceptance of responsibility and a lesser sentence. (Doc. 1835 at 2, 4-5). Movant avers the following:

> 28. In or about September, 2006 . . . Attorney Morris said that AUSA Nelan had offered a plea bargain of twelve (12) years and a possible 5k1.1 reduction. . . .
>
> 29. . . . Attorney Morris . . . asked why I would accept a plea offer when I had a complete defense to all the charges in the indictment. Attorney Morris explained that at all times I acted with good faith advice of

6

counsel and mortgage lenders and that such acts on my part were a complete defense to the charges according to the U.S. Court of Appeals for the Eleventh Cirucit [sic] (where I was charged).

. . . .

32. . . . I was also confident in the advice given by Attorney Morris that I had a complete defense for trial and should not take the plea offered.

. . . .

40. Had Attorney Morris told me that certain predicates were needed to be proven for my defense, I would have definitely accepted the Government's 12 year plea offer . . . . I rejected the plea offer based solely on the advice of Attorney Morris that I had a complete defense to the charges and should not accept the plea offer.

(Doc. 1781, Aff.).

## C. Hearing

The Court held a hearing at which Movant, Mr. Morris, Ms. Nelan, and others testified. (Doc. 1841). The parties stipulated that there was no formal written plea offer. (Id. at 104). Movant testified, in accord with his affidavit, that Mr. Morris told him that Ms. Nelan had offered a twelve-year plea deal, saw that he was "definitely interested in the plea," and asked him why would he consider a twelve year prison term when he had a complete defense. (Id. at 18-20). Movant testified that Mr. Morris never discussed the qualifications for, or the possibility that the Court may not give,

7

a jury instruction on a good-faith advice-of-counsel defense. (Id. at 20). Movant stated that he discussed with his family whether to take the plea and decided to go to trial based on Mr. Morris's advice that he had a complete defense and should prevail. (Id. at 25). Movant testified that had he known he did not have a good-faith advice-of-counsel defense, he would have pleaded guilty. (Id. at 26). Movant admitted that he never received any written plea offer and that the only evidence he had was his word and the word of Mr. Morris.[1] (Id. at 34-35).

Movant also testified that when he retained Mr. Morris he agreed to make a full disclosure to Mr. Morris of any ongoing business or real estate transaction. (Id. 29). Movant admitted that after retaining Mr. Morris, he had, among other things, submitted false financial statements, committed bank fraud, submitted false credit applications, committed wire fraud, and committed mail fraud, as charged (and found guilty of) in counts three, four through eight, eighteen, thirty-five to thirty-eight, forty-six, forty-eight. (Id. at 30-34). Movant admitted to numerous acts of dishonesty – fraud, theft by taking, theft of services, conversion, bank fraud, fraud by wire, fraud

---

[1]Movant also stated that the word of Attorney Mark Kadish would support his claim. (Doc. 1841 at 35). Mr. Kadish, however, did not testify.

8

by mail, lying on credit applications, lying on financial statements, and lying under penalty of perjury. (Id. at 35-37).

Movant's mother testified that Movant had discussed with her that he had been offered a plea, that his attorney had advised him that he could win the case, and that he was going to go with his attorney's advice. (Id. at 44). Movant's sister testified that Movant had discussed with her a twelve-year plea offer, that she had advised him to take it, that Movant had expressed that he had a good defense and should go to trial, and that Movant never admitted guilt or wrong-doing to her. (Id. at 46-48). Movant's daughter testified that Movant had discussed with her a plea offer, that he stated that his attorney did not see why he should consider a plea offer when he had a complete defense, and that he never admitted that he did anything that he knew was wrong. (Id. at 50-51, 53).

Mr. Morris testified that, after Movant retained him in 2001, he asked Movant to keep him "in the loop" regarding any ongoing transactions, that he met frequently with Movant, and that he had not been aware that Movant had committed additional crimes after that time. (Id. at 58). Mr. Morris also testified that it was his practice to convey a plea offer or discuss the possibility of a plea, to discuss the strengths and weaknesses of a case, but never to make a recommendation as to whether a defendant

9

should plead guilty or go to trial. (Id. at 54, 62). Mr. Morris testified that Movant's attitude was "that he was innocent and did not think it fair, appropriate, or acceptable that he plead guilty to something he didn't do, give up all of his properties and his money under those circumstances" and that, although they had discussions, "his decision did not change." (Id. at 65). Mr. Morris testified that in 2005 he had meaningful plea discussions with Ms. Nelan involving a plea in the range of seven to nine years (depending on enhancements and reductions), which he discussed with Movant but that Movant rejected the parameters of the informal plea discussion and there was no counteroffer.[2] (Id. at 66-68, 76). Mr. Morris testified that he did not recall asking Movant why he would take a plea offer when he had a complete defense and that he had not advised Movant that he should not plead guilty because he had a complete defense. (Id. at 68-69). Mr. Morris stated that his notes indicated that he had a discussion with Movant in August 2006 regarding a plea, that he could not remember the discussion, but that in accord with his normal practice he would not have advised Movant one way or the other as to whether he should plead guilty. (Id. at 77-78). Mr. Morris testified that throughout trial preparation he believed Movant was entitled to

---

[2]Movant has not raised a claim in regard to the 2005 plea discussions or his rejection of the alleged offer at that time.

10

a good-faith reliance-on-counsel defense and that Movant could get a jury instruction on that defense and that he could not remember ever telling Movant that the Court might not allow that jury charge. (Id. at 87).

Ms. Nelan testified that she may have had plea discussions with Mr. Morris but that the government never made a plea offer. (Id. at 105). Ms. Nelan testified that in or around September of 2006, the government did not make a plea offer of twelve years – "[t]here was no plea, period, but if you put it in the context of 12 years, certainly, certainly not."[3] (Id. at 107-08). Ms. Nelan testified that Movant's guidelines range would have been in the upper range of thirty years to life, that she was not aware of the government's fraud division offering a plea deal in another case for less than half of a defendant's guidelines range. (Id. at 108-09). Ms. Nelan further testified that Movant was the leader and was involved in all of the transactions and that his relevant conduct was much greater than the relevant conduct of other defendants in this case. (Id. at 109).

---

[3]Ms. Nelan testified that she did not remember the specifics of a plea agreement with one of the closing attorneys in the case and that she did not remember the sentence for another closing attorney in the case. (Doc. 1841 at 112). To the extent that Movant suggests that Ms. Nelan's lack of memory on those matters shows a lack of memory on the alleged twelve-year plea offer, (Doc. 1848 at 5), the Court disagrees. Ms. Nelan was clear on the issue of a twelve-year plea offer.

11

AO 72A
(Rev.8/82)

At the end of the hearing, the undersigned advised the parties that "[i]f the government didn't make a plea offer and Ms. Nelan would never have accepted a plea offer that was anything in the range of what [Movant] thought he was accepting or rejecting, I don't see how there is ineffective assistance of counsel." (Id. at 115). However, the undersigned allowed the parties to submit further briefing, especially in regard to Movant's amended claim that he would have pled straight up if he had understood that he did not have a good-faith advice-of-counsel defense. (Id. at 115).

### D.   Argument

In his post-hearing brief, Movant argues that counsel performed deficiently and that he was prejudiced by relying on counsel's advice and rejecting the twelve-year offer and in not considering a straight-up plea. (Doc. 1848 at 13, 15; See Doc. 1781, Aff. ¶ 28). Movant argues that his "guideline calculation resulted in a total offense level of 40 and a Criminal History Category II with a range of 324-405" and that if he had "pled guilty to the indictment without a plea agreement, and received a 3 level downward adjustment as credit for Acceptance of Responsibility, his total offense level would have been 37, with a resulting guideline range of 262-327."[4] (Doc. 1848 at 7).

---

[4]Movant misstates the guidelines range for a three-level downward adjustment. The Guidelines Sentencing Table shows that Criminal History Category II and offense level forty yields a guidelines range of 324-405, that a two-level downward adjustment

Movant argues that Ms. Nelan's testimony that the government would not have offered a plea deal for half of a defendant's estimated guidelines range – i.e. a twelve-year offer to Movant – is contradicted by the plea deals that numerous other co-defendants received. (Id. at 7-12).

The government argues that "an inherent condition for asserting an ineffective assistance claim [based on plea bargaining assistance] is some record evidence that the Government actually extended a plea offer to the defendant[.]"[5] (Doc. 1849 at 2-3). The government argues that the issue for Movant is not whether the government could have offered a twelve-year plea offer but whether the government did make such an offer, which it did not. (Id. at 7).

Movant counters that he need not show an existing plea offer to establish prejudice and that it is enough to show that counsel's performance was deficient and

---

would have yielded a guidelines range of 262-327, and that a three-level downward adjustment would have yielded a guidelines range of 235-293. U.S.S.G. Ch. 5, Pt. A (table). Notwithstanding Movant's misstatement, he fails to show prejudice as discussed further below.

[5]The government relies on Lafler v. Cooper, _ U.S. _, _, 132 S. Ct. 1376, 1387 (2012) ("It is, of course, true that defendants have no right to be offered a plea . . . nor a federal right that the judge accept it. . . . In the circumstances here, that is beside the point. If no plea offer is made, . . . the issue raised here simply does not arise." (citation and internal quotation marks omitted)).

13

that, had he received constitutionally adequate advice, there is a reasonable probability that the parties would have reached a plea agreement acceptable to the Court or that he would have pleaded straight up. (Doc. 1850, Attach. at 6-7, 9, 15). Movant asserts that the examples of other plea agreements in the case demonstrate that it was reasonably probable that he could have obtained a favorable plea agreement and that, at the very least, he would have pleaded guilty straight up, which would have resulted in a lesser sentence. (Id. at 6, 10).

**E.    Analysis**

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. Id. at 690-92. The Court may resolve an ineffective assistance claim based on either of the above prongs. Bottoson v. Moore, 234 F.3d 526, 532 (11th Cir. 2000).

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland." Missouri v. Frye, _ U.S. _, _, 132 S. Ct. 1399, 1405 (2012). To show prejudice, "a defendant must show the

14

outcome of the plea process would have been different with competent advice." Lafler, _ U.S. at _, 132 S. Ct. at 1384. In the context of counsel's advice to reject a favorable plea offer, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id., _ U.S. at _, 132 S. Ct. at 1385; Frye, _ U.S. at _, 132 S. Ct. at 1410 ("In order to complete a showing of Strickland prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is of particular importance because a defendant has no right to be offered a plea . . . .").

Movant's claims fail because he does not show prejudice. Even if Movant has correctly argued that he need not show an existing plea offer to establish prejudice, he

15

would still have to show that, but for counsel's deficiency, there is a reasonable probability (1) that the alleged twelve-year plea offer would have been made and accepted, presented to the court, and accepted by the court or that he would have pleaded straight up, and (2) that his convictions and sentences would have been less severe than his convictions and sentences at trial. Movant has not made that showing.

The Court credits (1) Mr. Morris's testimony that Movant did not indicate a desire to plead guilty, (Doc. 1841 at 65), and (2) Ms. Nelan's testimony that there was no twelve-year plea offer and that such an offer was unacceptable in light of Movant's leadership role and involvement in all of the transactions, (id. at 107-09). Absent any willingness by the government to enter into a twelve-year plea agreement, Movant cannot show that he was prejudiced by Mr. Morris's alleged advice not to accept such an offer. Movant's argument that other defendants received favorable plea agreements akin to the alleged twelve-year offer is insufficient to show that there is a reasonable probability that the government would have been willing to entertain a twelve-year plea agreement in light of Ms. Nelan's decisive testimony that the government would not having been willing to entertain such an offer and her explanation as to why. (See id. at 109).

16

Movant's assertion that he would have pleaded guilty straight up also fails to show prejudice. As stated above, the Court credits Mr. Morris's testimony that Movant believed that he was innocent and that it was not acceptable that he plead guilty and that Movant's decision did not change. The Court does not credit Movant's testimony that he would have pleaded guilty straight up. Further, Movant does not show that it is reasonably probable that he would have accepted responsibility in such a way that he would have received a two-level downward adjustment, which takes more than simply pleading guilty. See U.S.S.G. § 3E1.1(a), Application Note 1(A) (listing "voluntary termination or withdrawal from criminal conduct or associations" as a factor to be considered in determining whether a defendant has accepted responsibility for his criminal conduct); United States v. Wade, 458 F.3d 1273, 1279 (11th Cir. 2006) ("The defendant has the burden of 'clearly demonstrating acceptance of responsibility and must present more than just a guilty plea.'" (quoting United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999))). Movant's continuation in significant criminal activities after 2001 – even though he was meeting frequently with Mr. Morris to discuss the federal criminal investigation and was on notice by that time that his activities were under federal criminal investigation – does not show a person who is willing to admit to criminal responsibility. Rather it exhibits a person who, in

17

conformity with Mr. Morris's testimony, believed he was "innocent and did not think it fair, appropriate, or acceptable that he plead guilty to something he didn't do, give up all of his properties and his money under those circumstances[.]"[6] (Doc. 1841 at 65). Nor does Movant show that it is reasonably probable that he would have timely decided to plead guilty such that the government would have moved for an additional one-level downward adjustment, which would have arguably placed his guidelines range at 235-293. See U.S.S.G. § 3E1.1(b) and supra n.4. Further, Movant has not attempted to meet his burden to show that there is a reasonable probability that his sentence would have been less in light of the fact that a straight up plea would have included the twenty-one charges on which he was acquitted, which included conduct that the Court would have been required to take into account in imposing sentence. Movant fails to show prejudice.

---

[6] It appears that pre-charge conduct such as Movant's could be considered in applying § 3E1.1. Although the court in Wade stated that the district court erred in denying a "two-level § 3E1.1(a) reduction on the basis of Wade's pre-federal charge conduct[,]" that holding applied to a defendant who was on notice based on only *state* charges that his ongoing conduct was criminal. The court did not appear to preclude the denial of a reduction if a defendant has notice – based on knowledge that *federal* charges are forthcoming – that his ongoing conduct is criminal. See Wade, 458 F.3d at 1281 ("[We] conclude that a defendant's conduct following earlier state charges, at least where that conduct occurred before he knew that federal charges were forthcoming, ought not vitiate the effect of his otherwise exemplary acceptance of responsibility once the federal charges were filed.").

**III.    Certificate of Appealability (COA)**

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." To satisfy that standard, a movant must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Lott v. Attorney Gen., 594 F.3d 1296, 1301 (11th Cir. 2010) (quoting Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted).

It is recommended that a COA is unwarranted because it is not debatable that Movant has failed to show prejudice based on his counsel's allegedly deficient performance. If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

19

## IV. Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion, as amended, (Docs. 1781, 1835), to vacate, set aside, or correct his federal sentence be **DENIED**, and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED** this 14th day of November, 2013.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)